2019 PA Super 50

| | | |
|---|---|---|
| SCOTT A. COURTNEY, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JENNIFER E. COURTNEY, | : | |
| | : | |
| Appellant | : | No. 1271 WDA 2017 |

Appeal from the Order Entered August 8, 2017
In the Court of Common Pleas of Allegheny County
Family Court at No.: FD 16-000887-0011

BEFORE: BOWES, J., DUBOW, J., and MURRAY, J.

OPINION BY DUBOW, J.: **FILED FEBRUARY 22, 2019**

Appellant, Jennifer E. Courtney, appeals from the August 8, 2017 Order[1] of the Allegheny County Court of Common Pleas ordering her to pay $310 in counsel fees to Appellee's counsel. After careful review, we reverse.

On May 18, 2016, Appellant filed a Petition for a Temporary Protection From Abuse ("PFA") Order against Appellee, her then-husband, while she was seeking a divorce. The parties had three biological children, all under age seven, and shared physical and legal custody. In her Petition, Appellant alleged "constant sexual abuse," "constant harassment," physical abuse, and described Appellee's attempt "to make a deal to move out but continue sexual acts." Petition for Temporary PFA, dated 5/18/16, at 3.

_____

[1] The trial court entered this Order on August 8, 2017. We have changed the caption accordingly.

On May 18, 2016, Appellant obtained a Temporary PFA Order against Appellee that, *inter alia*, prohibited him from returning to the shared residence and abusing, harassing, stalking, or threatening Appellant and the children. Temporary PFA Order, dated 5/18/16, at 1-3.[2]

The parties litigated divorce, custody, and PFA proceedings over the ensuing months. A subsequent custody Order granted shared legal and physical custody. Custody Order, dated 9/19/16, at 1-2. Another Order prohibited Appellant's boyfriend from being in the residence during her custody time. Interim Order, dated 6/3/17.

On June 22, 2017, Appellant filed a second Temporary PFA Petition, in part due to an incident during a custody exchange. In addition to referencing the prior history of "sexual abuse and control," Appellant alleged as follows:

> For the past year, the defendant has psychologically abused me. He has tried to control me by constantly threatening to take away my children from me. Yesterday, when the defendant came to drop off our children, he demanded access to my home because he believed my boyfriend was present. My boyfriend was not present. I refused to grant the Defendant access, so he called the police. The police arrived, but did not come into the home as the children were not in danger.
>
> The defendant is constantly trying to control me, watching me, driving by my home, and stalking me. He states that he is going to leave me hurt and broke, living in a van down by the river. I just want the harassment to stop.

_____

[2] The record is unclear about how this PFA Petition resolved. The court continued a scheduled June 2016 hearing on the PFA Petition, and the matter appears to have been consolidated for a custody conciliation with a domestic relations officer in September 2016, which resulted in a custody Order. The trial court's Opinion and the briefs provide no clarity on this point.

Petition for Temporary PFA, dated 6/22/17, at 3.

On August 3, 2017, Appellee notified Appellant that he would file an Emergency Petition for Counsel Fees alleging Appellant had filed her second Temporary PFA Petition in bad faith.[3]

On August 8, 2017, the parties appeared for a hearing on the second PFA. Prior to the hearing, Appellant agreed to withdraw her PFA Petition if the court entered an Order directing the parties, *inter alia*, to exchange custody at the local police department and routinely communicate only by email. The trial court granted Appellant's request and entered an Order withdrawing Appellant's PFA Petition and imposing the requested conditions. PFA Withdrawal Order, dated 8/8/17. Because of this resolution, the court did not conduct the PFA evidentiary hearing.

That same day, however, the court conducted a hearing on Appellee's Emergency Petition for Counsel Fees that was based on Appellant's filing of the second Temporary PFA Petition. **See** N.T., 8/8/17. Both Appellant and Appellee testified. The trial court concluded that Appellant had filed her second Temporary PFA Petition in bad faith because there was no testimony about Appellee's forcible attempt to enter her home. In finding that Appellant had filed the PFA in bad faith, the trial court concluded that Appellant's "vague

_____

[3] The lower court entered Appellee's Emergency Petition on the docket on August 9, 2017.

allegations of psychological abuse do not rise to the level of a valid PFA so I do find that the PFA was filed in bad faith." N.T., 8/8/17, at 26.

As a result, the trial court entered an Order granting Appellee's Petition and directing Appellant to pay $310 in counsel fees payable within ten days.[4] Appellant filed a Motion to Reconsider, which the trial court denied on September 1, 2017.

Appellant filed a timely Notice of Appeal on September 6, 2017. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

[1.] Did the trial court commit an abuse of discretion and/or error of law in awarding counsel fees to [Appellee] pursuant to 23 Pa.C.S. § 6117(b) when there was no evidence that [Appellant] had acted in bad faith in commencing the PFA action?

[2.] Did the trial court commit an abuse of discretion and/or error of law in awarding counsel fees to [Appellee] pursuant to 42 Pa.C.S. § 2503 when there was no evidence that [Appellant] had acted in a dilatory, obdurate, or vexatious manner in commencing the PFA action?

[3.] Did the trial court commit an abuse of discretion and act contrary to the purpose and legislative intent of the PFA Act and contrary to the public policy of the Commonwealth of Pennsylvania by imposing counsel fees against [Appellant], who commenced the PFA action alleging abuse and seeking protection and safety?

---

[4] The trial court stated on the record that Appellant's failure to pay the $310 within ten days "will result in the issuance of a rule to show cause with incarceration being the most likely outcome if the burden of proof is met." N.T., 8/8/17, at 28.

Appellant's Brief at 4 (capitalization omitted).[5]

"Our standard of review of an award of counsel fees is well settled: we will not disturb a trial court's determination absent an abuse of discretion." ***A.L.-S. v. B.S.***, 117 A.3d 352, 361 (Pa. Super. 2015). "A trial court has abused its discretion if it failed to follow proper legal procedures or misapplied the law." ***Id.***

We will address Appellant's first and third issues together. Section 6117(b) of the Domestic Relations Code provides: "Notwithstanding any other provision of law, upon finding that an individual commenced a proceeding under this chapter in bad faith, a court shall direct the individual to pay to the defendant actual damages and reasonable attorney fees." 23 Pa.C.S. § 6117(b). Section 6117(b) then cautions trial courts: "**Failure to prove an allegation of abuse by a preponderance of the evidence shall not, by itself, result in a finding of bad faith**." ***Id.*** (emphasis added).

The Domestic Relations Code does not define bad faith. Black's Law Dictionary defines "bad faith" as "[d]ishonesty of belief, purpose, or motive." Black's Law Dictionary (10th ed. 2014).

---

[5] With respect to Appellant's second issue, the trial court specifically declared in its Opinion that it did not award counsel fees for "dilatory, obdurate or vexatious conduct" pursuant to 42 Pa.C.S. § 2503. Appellee originally sought fees under Section 2503 as well, and Appellant addressed this separately in her Brief in an abundance of caution. We will not address this issue since it did not serve as the basis for the trial court's award of counsel fees.

This Court has explored the concept of bad faith in other contexts, but not with respect this statute. **See**, **e.g.**, **Hart v. Arnold**, 884 A.2d 316, 342 (Pa. Super. 2005) (defining arbitrary and vexatious conduct as distinct from bad faith conduct, and concluding that "an opponent can be charged with filing a lawsuit in 'bad faith' if he filed the suit for purposes of fraud, dishonesty, or corruption."); **Condio v. Erie Ins. Exchange**, 899 A.2d 1136, 1143 (Pa. Super. 2006) ("[M]ere negligence or bad judgment is not bad faith. To support a finding of bad faith, the insurer's conduct must be such as to 'import a dishonest purpose.' In other words, the plaintiff must show that the insurer breached its duty of good faith through some motive of self-interest or ill-will.").

In defending its award of counsel fees, the trial court opined as follows: "Upon questioning by her counsel, [Appellant] stated that the basis for the PFA arose from a fear created by [Appellee] after he came to her house and tried to forcibly enter her home. However, subsequent testimony served to disprove this basis." Trial Court Pa.R.A.P. 1925(a) Opinion, dated 11/6/17, at 5 (footnote omitted). Of particular importance to the trial court's decision: "Absent was any testimony of [Appellee's] attempt of forcible entry, which [Appellant] explained was the basis for her alleged fear that [led] to her seeking a PFA in the first place." **Id.** at 6.

After careful review, we conclude that (1) trial court misapplied the clear dictates of Section 6117(b), and (2) the record does not support the trial court's finding of bad faith.

First, we hold that the trial court found bad faith due to Appellant's failure to prove her allegations of abuse by a preponderance of the evidence. The court equated the failure to prove her allegation with Appellant's bad faith. This is contrary to Section 6117(b), which instructs that the "[f]ailure to prove an allegation of abuse by a preponderance of the evidence shall not, by itself, result in a finding of bad faith." 23 Pa.C.S. § 6117(b).

Second, the trial court's bad faith finding is unsupported by the certified record. In making its finding on the record, the trial court simply restated Appellant's original allegation as described by her during her testimony at the hearing on the Emergency Petition for Counsel Fees wherein she mentioned forcible entry. However, Appellant had not included forcible entry as part of her allegations in her second Temporary PFA Petition and no hearing on the PFA occurred.[6] The court briefly recounted some of the evidence presented at the hearing on the Emergency Petition for Counsel Fees and summarily restated its conclusion that the evidence did not meet the applicable PFA standard. *See* Trial Court Opinion, dated 11/6/17, at 5-6. Without more,

_____

[6] We also note that the trial court never ruled on Appellant's second Temporary PFA Petition; Appellant had withdrawn her Petition by the time the court conducted the hearing on Appellee's Emergency Petition for Counsel Fees.

there is no evidentiary basis for the bad-faith finding based on this sparse record.[7]

In sum, the trial court misapplied the clear dictates of Section 6117(b) because it found bad faith due to Appellant's failure to prove her allegations of abuse by a preponderance of the evidence. Furthermore, the court's bad faith finding is unsupported by the certified record. Accordingly, we are constrained to reverse.

Order reversed.

Judgment Entered.

*Joseph D. Seletyn*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/22/2019

_____

[7] Our review of the certified record shows no other apparent basis for the court's bad faith finding that could support affirmance on alternative grounds. Absent was any evidence regarding Appellant's dishonest belief, purpose, or motives. The trial court's Opinion alludes to allegations about an issue with the presence of Appellant's boyfriend, and the parties address this point in their respective briefs. Yet the trial court did not rely on these allegations in support of its bad faith determination, nor did it make any credibility determinations about this point with any clarity. Rather, the trial court exclusively focused on the lack of testimony about forcible entry into Appellant's home.